**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AKEBIA THERAPEUTICS, INC., )<br>              Plaintiff, )<br>              )<br>v.                                    )<br>                                    )<br>ALEX M. AZAR II, in his official capacity )<br>as Secretary of Health and Human Services; )<br>UNITED STATES DEPARTMENT OF )<br>HEALTH AND HUMAN SERVICES; )<br>SEEMA VERMA, in her official capacity as )<br>Administrator of the CENTERS FOR )<br>MEDICARE & MEDICAID SERVICES; )<br>              Defendants. )<br>                                    ) | <u>No. 19-cv-12132-ADB</u><br><br>(Leave to file granted on 11/18/19) |

**AMICUS BRIEF OF THE MEDICARE ADVOCACY PROJECT OF GREATER**
**BOSTON LEGAL SERVICES IN SUPPORT OF PLAINTIFF'S MOTION FOR A**
**PRELIMINARY INJUNCTION OR FOR SUMMARY JUDGMENT**

**STATEMENT OF INTEREST AND INTRODUCTION**

The Medicare Advocacy Project ("MAP") of Greater Boston Legal Services ("GBLS") provides free legal assistance to Medicare beneficiaries in Boston and throughout four counties in eastern Massachusetts. By definition, Medicare beneficiaries include the elderly (65 or older), younger individuals with disabilities, and individuals with end stage renal disease. MAP's services range from advice to full representation before the Federal District Court. MAP fights to win coverage of medical services and equipment, access to stays in hospitals and skilled nursing homes, and promotion of the rights of individuals to obtain affordable and effective prescription medications. MAP engages in policy advocacy on a state-wide basis. Medicare is a complex program and MAP works to ensure that beneficiaries receive the benefits to which they

are entitled. GBLS, MAP's non-profit parent organization, provides civil (non-criminal) legal assistance to low-income people in Boston and thirty-one additional cities and towns.

The Food and Drug Administration ("FDA") previously approved Plaintiff's compound Auryxia™ as a drug for the treatment of (i) hyperphosphatemia (elevated phosphorus levels in the blood) in chronic kidney disease patients on dialysis and (ii) iron deficiency anemia ("IDA") in chronic kidney disease patients not on dialysis. Defendants treated Auryxia as a prescription drug covered under the Medicare Part D Prescription Drug Program for each of these indications. In September 2018, however, Defendant, the Centers for Medicare & Medicaid Services ("CMS"), advised Part D plan sponsors to require prior authorization from the plan before dispensing or reimbursing Auryxia for hyperphosphatemia and also revoked Part D coverage for the IDA indication entirely (Exhibit 1 to Plaintiff's Complaint, Docket No. 1).

MAP files this Amicus brief on behalf of current and future Massachusetts Medicare beneficiaries who suffer or will suffer from chronic kidney disease and related IDA and who could benefit from Auryxia to increase their serum iron levels.

## ARGUMENT

**I.  Defendants' rescission of Medicare Part D coverage for Auryxia for IDA may lead to worse health outcomes for many Medicare beneficiaries in Massachusetts who have or will acquire IDA secondary to chronic kidney disease.**

Chronic kidney disease is surprisingly prevalent. A division of the National Institutes of Health estimated that, as of 2015, the overall prevalence of chronic kidney disease among American adults was approximately 14 percent, and that some 468,000 Americans had progressed to dialysis. National Institute of Diabetes and Digestive and Kidney Diseases, Kidney Disease Statistics for the United States, https://www.niddk.nih.gov/health-information/health-statistics/kidney-disease (last visited Nov. 7, 2019). A National Health and

2

Nutrition Examination Survey conducted in 2007-2008 and 2009-2010 estimated that IDA was twice as prevalent in people with chronic kidney disease (15.4%) as in the general population (7.6%).  M. Stauffer and T. Fan, Prevalence of Anemia in Chronic Kidney Disease in the United States (2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3879360/ (last visited Nov. 7, 2019).

Defendant CMS has elsewhere acknowledged that "[c]hronic kidney disease (pre-dialysis and end-stage renal disease requiring dialysis) have become more common in the U.S. over time"[1] and has further acknowledged that IDA is a common complication of chronic kidney disease.  Centers for Medicare & Medicaid Services, Proposed Decision Memo for Erythropoiesis Stimulating Agents (ESAs) for Treatment of Anemia I Adults with CKD including Patients on Dialysis and Patients not on Dialysis (CAG-00413N) at 8.[2]

Chronic kidney disease can gradually lead to kidney failure, requiring dialysis or, if available, a kidney transplant.  National Institute of Diabetes and Digestive and Kidney Diseases, What is Chronic Kidney Disease?, https://www.niddk.nih.gov/health-information/kidney-disease/chronic-kidney-disease-ckd/what-is-chronic-kidney-disease (last visited Nov. 13, 2019). IDA is common in patients suffering from chronic kidney disease and tends to worsen as the

---

[1] According to the National Institute of Diabetes and Digestive and Kidney Diseases (part of the National Institutes of Health), the "overall prevalence of CKD [chronic kidney disease] increased from 12 percent to 14 percent between 1988 and 1994 and from 1999 to 2004 but has remained relatively stable since 2004. The largest increase occurred in people with Stage 3 CKD [mild-to-severe loss of kidney function], from 4.5 percent to 6.0 percent, since 1988." Meanwhile, the "adjusted incidence rate of ESRD in the United States rose sharply in the 1980s and 1990s, leveled off in the early 2000s, and has declined slightly since its peak in 2006."  National Institute of Diabetes and Digestive and Kidney Diseases, Kidney Disease Statistics for the United States, https://www.niddk.nih.gov/health-information/health-statistics/kidney-disease (last visited Nov. 7, 2019).

[2] In fact, the Department of Health and Human Services (HHS), of which Defendants are a part, launched the President's 'Advancing American Kidney Health' initiative this summer.  The President's Executive Order called for HHS to launch a public awareness campaign for chronic kidney disease, advance precision medicine for kidney disease through NIH-funded research, and deliver more treatment options, among other objectives.  Department of Health and Human Services, HHS Launches President Trump's 'Advancing American Kidney Health' Initiative, https://www.hhs.gov/about/news/2019/07/10/hhs-launches-president-trump-advancing-american-kidney-health-initiative.html (last visited Nov. 14, 2019).

disease progresses.  Id.  IDA secondary to chronic kidney disease can lead to heart problems, including irregular heartbeat or cardiac failure.  Id.

The availability of Plaintiff's drug, Auryxia, provides IDA patients, who have not progressed to dialysis, with an oral treatment designed to improve the iron levels in their blood serum by increasing their levels of hemoglobin.  Ganz T., Bino A. and Salusky I., Mechanism of Action and Clinical Attributes of Auryxia (Ferric Citrate) (2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6562046/ (last visited Nov. 7, 2019)[3].

Auryxia is the first FDA-approved drug which is an oral treatment of IDA for patients with chronic kidney disease who are not on dialysis.  Plaintiff's Complaint at 2-3.  The alternative to treatment with Auryxia is treatment with oral iron, which not all patients benefit from,[4] or else intravenous infusion of iron, which may be covered by Medicare Part B and which, if given at infusion centers, may prove more expensive to patients.[5]  Iron infusion may also inflict damage to the veins of chronic kidney disease patients, whose survival may eventually depend upon the quality of their veins if they progress to dialysis.  Plaintiff's Complaint at 21.

Massachusetts had a population of 6.9 million people as of mid-2018.  QuickFacts Massachusetts, U.S. Census Bureau, https://www.census.gov/quickfacts/MA (last visited Nov.

---

[3] Support for this article was provided by Keryx Biopharmaceuticals, Inc., which is now a wholly owned subsidiary of Akebia Therapeutics, Inc.

[4] Declaration of Glenn M. Chertow, MD, MPH (Docket No. 19).

[5] The Medicare Part D benefit provides a low income subsidy to reduce costs for individuals with incomes below 150 % of the federal poverty level, Social Security Program Operations Manual System HI 03001.005 (March 25, 2019) https://secure.ssa.gov/apps10/poms.nsf/lnx/0603001005, while the Massachusetts Qualified Medicare Beneficiary program, which assists with Part B out of pocket costs, will, as of January 1, 2020, provide assistance for individuals with incomes below 130% of the federal poverty level.  See proposed regulation for 130 CMR 519.000, https://www.mass.gov/service-details/masshealth-public-notices .   For any individual beneficiary, the treatment with the higher out of pocket costs may vary, but with Part D coverage, beneficiaries have a choice.

14, 2019). Of that population, approximately 80.2% (5,533,800 persons) were adults. *Id.* Statistically, about 774,000 of these adults (14%) can be expected to eventually experience chronic kidney disease. About 119,000 of that cohort (15.4%) can be expected to eventually experience IDA secondary to their chronic kidney disease.

Defendants' decision to rescind Part D coverage for Auryxia will negatively affect Medicare beneficiaries in Massachusetts who suffer from IDA secondary to chronic kidney disease, restricting access to a drug that could slow progression of their disease and avoid the need for costly, invasive iron infusion services.[6] Over time, this may lead to overall worse health outcomes for those patients.[7]

## II. Defendants cannot characterize Auryxia's status as a covered Part D drug for one FDA-approved use but not another non-excluded FDA-approved use.

The Medicare statute defines a "covered Part D drug" as "a drug that may be dispensed only upon a prescription and that is described in subparagraph (A)(i), (A)(ii), or (A)(iii) of section 1396r-8(k)(2) of this title." 42 U.S.C. sec. 1395w-102(e)(1)(A). More specifically, Section 1396r-8(k)(2)(A)(i) defines a "covered outpatient drug" to mean a drug "approved for safety and effectiveness as a prescription drug under section 505 . . . of the Federal Food, Drug, and Cosmetic Act." 42 U.S.C. Sec. 1396r-8(k)(2)(A)(i). The statute permits exclusion of certain

---

[6] Based on the results of a randomized trial, Auryxia was shown to reduce use of erythropoiesis-stimulating agents and intravenous iron, hospital admissions, hospital days, and time to the composite end point of death, provision of dialysis, or kidney transplantation for patients with IDA secondary to chronic kidney disease. Block, Geoffrey et al., "A Pilot Randomized Trial of Ferric Citrate Coordination Complex for the Treatment of Advance CKD," Journal of the American Society of Nephrology 30: 1495-1504 (2019). Funding for this trial and active study medication were provided by Keryx Biopharmaceuticals, Inc., through an investigator-initiated grant. Keryx Biopharmaceuticals, Inc. did not direct the design, conduct, or analysis of the trial. Keryx Biopharmaceuticals is now a wholly owned subsidiary of Akebia Therapeutics, Inc.

[7] Defendants' decision to restrict coverage for an innovative therapy for Medicare beneficiaries in Massachusetts who suffer from IDA secondary to chronic kidney disease is furthermore inconsistent with the current HHS goal of expanding access to treatments for kidney disease.

limited classes of drugs, including among others, "prescription vitamins and mineral products, except prenatal vitamins and fluoride preparations." 42 U.S.C. Sec. 1396r-8(d)(2)(E).

The Food & Drug Administration ("FDA") approved Auryxia (i) on September 8, 2014, for patients on dialysis who have hyperphosphatemia and (ii) on November 7, 2017, for patients with IDA and chronic kidney disease (but who are not on dialysis). For a brief summary, see Drugs.com, Auryxia Approval History, https://www.drugs.com/history/auryxia.html (last visited Nov. 13, 2019). CMS began treating Auryxia as a covered Part D drug for each indication upon each FDA approval. Plaintiff's Complaint at 3.

Defendants announced their rescission of Part D coverage for Auryxia only for Medicare patients with IDA secondary to chronic kidney disease by means of a short e-mail to Plan D sponsors on September 14, 2018 ("Rescission E-mail", Exhibit 1 to Plaintiff's Complaint). In the Rescission E-mail, Defendants stated that "[c]onsistent with other iron products, ferric citrate [Auryxia] was removed from the August CY 2018 formulary reference file (FRF)." *Id.* This vague language suggests that Defendants were relying on the statutory exclusion from Part D coverage for "[p]rescription vitamins and mineral products." 42 U.S.C. Sec. 1396r-8(d)(2)(E). Later in the Rescission E-mail, Defendants noted that "[s]ince Auryxia® may or may not meet the definition of a Part D drug *depending on its use* . . .", Part D sponsors should require prior authorization to ensure usage for a covered indication (emphasis added). The Rescission E-mail provided no rationale for reclassifying Auryxia as a mineral, included no discussion, and was conclusory in nature.

Defendants cannot have it both ways. Auryxia cannot be both an excluded mineral and not an excluded mineral. Despite Defendants' Rescission E-mail, Auryxia remains an FDA-approved drug for both FDA-approved indications, meaning that it should remain a "covered

outpatient drug" for Medicare Part D purposes. There does not appear to be any provision in the Medicare statute that permits Defendants to classify an FDA-approved drug as a covered outpatient drug for some FDA-approved purposes, but not for others, except for the very limited exclusions in 42 U.S.C. 1396r–8(d)(2), which we do not believe are applicable here. In particular, the only drug *uses* excluded by the statute are for anorexia, weight control, fertility, cosmetic purposes, hair growth, the relief of coughs and colds, and sexual or erectile dysfunction. 42 U.S.C. 1396r–8(d)(2). Auryxia is not used for any of these purposes and thus its status as a covered Part D drug should not turn on its use, so long as it is employed for an FDA-approved use.

Defendants' position is in conflict with other federal agencies as well as other payors. The FDA approved Auryxia as a drug for treatment of hyperphosphatemia or IDA. The United States Patent and Trademark Office, which would not deem a "mineral" to be patentable subject matter[8], approved "at least fourteen patents" in connection with Auryxia. Plaintiff's Complaint at 12. Notably, the Massachusetts Medicaid Program ("MassHealth") covers Auryxia and does so without any prior authorization restrictions. MassHealth Drug List at https://masshealthdruglist.ehs.state.ma.us/MHDL/pubsearch.do?index=A (last visited Nov. 15, 2019) (listing for Auryxia shows that MassHealth covers the drug in instances where the prescriber has determined it to be medically necessary for a particular Medicaid member and does so without prior authorization requirements).

Many Medicare beneficiaries are only able to afford to fill their prescriptions when those prescriptions are covered by their Part D plans. When a drug has FDA-approved uses, Medicare

---

[8] https://www.uspto.gov/web/offices/pac/mpep/s2106.html (2106.04(b) Laws of Nature, Natural Phenomena & Products of Nature [R-08.2017])

beneficiaries should be able to rely on the availability of Part D coverage for all FDA-approved uses of that drug.  Given that Part D is a component of the Social Security Act, it "should be broadly construed, so as to carry out Congress's intent to provide medical expense coverage for all qualifying individuals."  *Mayburg v. Sec'y of Health & Human Servs.*, 740 F.2d 100, 103 (1st Cir. 1984).  *See also McGuin v. Sec'y of Health & Human Servs.*, 817 F.2d 161, 174 (1st Cir. 1987) (saying that the Social Security Act "is a remedial statute, to be broadly construed and liberally applied in favor of beneficiaries.").  Clearly, based on published medical evidence and in the opinion of the FDA, it is in the interest of beneficiaries to have access to this drug.  We support the Plaintiff in its Motion for a Preliminary Injunction or in the Alternative for Summary Judgment.

## CONCLUSION

For all of the above reasons, MAP respectfully urges the Court to reject Defendants' conclusory attempt to rescind Auryxia's status as a covered Part D drug for use in IDA secondary to chronic kidney disease.

Dated:  November 18, 2019                    Respectfully submitted,

/s/ Nancy J. Lorenz
Nancy J. Lorenz
(BBO#305000)
On brief: John Harrington              Greater Boston Legal Services
197 Friend Street, Fourth Floor
Boston, Massachusetts 02114-1806
617-603-1573
nlorenz@gbls.org

                                          /s/ Donna McCormick
Donna M. McCormick
(BBO#559790)
Greater Boston Legal Services
197 Friend Street, Fourth Floor
Boston, Massachusetts 02114-1806
617-603-1534
dmccormick@gbls.org

/s/Radhika Bhattacharya
Radhika Bhattacharya
(BBO#674364)
Greater Boston Legal Services
197 Friend Street, Fourth Floor
Boston, Massachusetts 02114-1806
617-603-1581
rbhattacharya@gbls.org

## CERTIFICATE OF SERVICE

I, Nancy J. Lorenz, hereby certify that this document filed through the EFC system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

November 25, 2019                                  */s/ Nancy J. Lorenz*
                                                              Nancy J. Lorenz