**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AKEBIA THERAPEUTICS, INC., <br><br>  Plaintiff, <br><br> v. <br><br> ALEX M. AZAR II, in his official capacity as Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; SEEMA VERMA in her official capacity as Administrator of the CENTERS FOR MEDICARE & MEDICAID SERVICES; CENTERS FOR MEDICARE & MEDICAID SERVICES, <br><br>  Defendants. | Civil Action No. 19-12132-ADB |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

**INTRODUCTION**

Plaintiff Akebia Therapeutics, Inc. ("Akebia") asks this Court to assume the role of the Secretary of Health and Human Services and declare that the drug Auryxia is a "covered part D drug" when prescribed to a Medicare beneficiary for iron deficiency anemia even though no such claim has been adjudicated by the Medicare Appeals Council, which renders final and binding decisions on the Secretary's behalf. Akebia asserts that it cannot bring such a claim before the agency, never acknowledging that there is an administrative review process for identical claims by beneficiaries. Because a beneficiary can seek coverage of Auryxia for iron deficiency anemia before the agency, which can culminate in a final decision by the Medicare Appeals Council that is reviewable in court, the Medicare statute forecloses judicial review of Akebia's claims. *See* 42 U.S.C. § 405(h). That Akebia itself cannot be a party to such a proceeding before the agency is of no import. Medicare's jurisdictional requirement "reaches beyond ordinary administrative law principles of ripeness and exhaustion of remedies" and "demands the channeling of virtually all legal attacks through the agency." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 12-13 (2000). The claim here can be—but has not been—so channeled. This action should therefore be dismissed.

Akebia's complaint also should not survive because there has been no final agency action that would justify review under the Administrative Procedure Act ("APA"). Akebia challenges only informal guidance, not the final adjudication of a concrete claim for benefits. Under Part D, prescription drug coverage is available to Medicare beneficiaries who enroll in plans offered by private insurers known as "sponsors." In September 2018, staff at the Centers for Medicare & Medicaid Services ("CMS") sent an email to plan sponsors advising that, because Auryxia had received Food and Drug Administration ("FDA") approval for an indication that is not coverable

1

under Part D, they should use a process to ensure that they covered the drug only for its other, statutorily permissible, indication. While this email provided guidance to plan sponsors, it did not make any final determination of a claim for benefits or foreclose any claim for coverage of Auryxia.

## BACKGROUND

### I. Statutory and Regulatory Background

Medicare is a federal health insurance program for the elderly and persons with disabilities. *See* 42 U.S.C. § 1395 *et seq.* The Medicare program has four parts: Part A, hospital insurance; Part B, medical insurance, including for physician-administered drugs; Part C, Medicare managed care plans; and, relevant here, Part D, which provides subsidized prescription drug coverage for enrollees. 42 U.S.C. §§ 1395w-101 to 1395w-154. Under Part D, Medicare does not directly reimburse beneficiaries for their prescription drug expenses. Instead, CMS contracts with private sponsors to provide prescription drug coverage to Medicare beneficiaries who elect to enroll in a Part D plan. *See* 42 U.S.C. §§ 1395w-111 and 1395w-112.

### A. Part D Coverage

Most self-administered prescription-only drugs approved by the FDA are "covered Part D drug[s]."[1] 42 U.S.C. § 1395w-102(e)(1)(A). Nonetheless, the statutory definition of "covered Part D drug" excludes "[p]rescription vitamins and mineral products, except prenatal vitamins and fluoride preparations." 42 U.S.C. §§ 1395w-102(e)(2) and 1396r-8(d)(2)(E). There are thousands of FDA-approved, prescription-only drugs in the United States, and CMS typically

---

[1] Drugs administered in a hospital inpatient setting or by a physician are typically covered under Part A or B. *See* 42 U.S.C. § 1395w-102(e)(2)(B).

2

addresses the applicability of the statutory exceptions to Part D coverage on a case-by-case basis via sub-regulatory guidance and informal communications like the one at issue in this case.[2]

Sponsors do not have to cover all drugs that are eligible for Part D coverage; instead, they may develop and market to beneficiaries a "formulary," or list of covered drugs. *See* 42 C.F.R. §§ 423.4 ("Formulary means the entire list of Part D drugs covered by a Part D plan"); 423.128. A sponsor's formulary must satisfy statutory and regulatory requirements and be approved by CMS. *See* 42 U.S.C. § 1395w-104(b)(3); 42 C.F.R. §§ 423.120(b), 423.128, and 423.272. The statute and regulations also require sponsors to develop and maintain "utilization management" programs, which may include prior authorization requirements for certain drugs.[3] 42 U.S.C. § 1395w-104(c); 42 C.F.R. § 423.120.

### B. The Part D Appeals Process for Coverage Determinations

Congress has created a specific, multi-part administrative review process by which beneficiaries may contest a sponsor's Part D coverage determination. 42 U.S.C. §§ 1395w-104(g) & (h), § 1395w-22(g). First, a beneficiary must challenge a coverage denial with the plan sponsor.[4] 42 U.S.C. §§ 1395w-104(g) and § 395w-22(g)(1)-(3); 42 C.F.R. § 423.566(b)(1).

---

[2] For example, the Medicare Prescription Drug Benefit Manual ("PDBM") includes a non-exhaustive chart containing "coverage clarifications for specific products/drugs/drug categories in accordance with statutory and regulatory requirements for Part D drugs." Dkt. 25-15, Ex. O, Ch. 6, App'x B.

[3] As is relevant here, prior authorization ("PA") is a concept borrowed from the Medicaid statute. In Medicaid, when a drug has a prior authorization requirement, approval (typically pursuant to the state's Medicaid Plan) is required before it is dispensed to a beneficiary. 42 U.S.C. § 1396r-8(d)(1)(A) and (d)(5). In Medicare Part D, prior authorization means that a sponsor must give approval before a drug is dispensed. "Part D sponsors should consistently utilize PA for those drugs with the highest likelihood of non-Part D covered uses." Ex. A, PDBM, Ch. 6, § 30.2.2.3. Unless otherwise specified, citations to "Ex. __" refer to the exhibits to the Declaration of Alexander R. White, filed concurrently.

[4] A sponsor must "have a procedure for making determinations regarding whether an individual . . . is entitled to receive a health service;" make coverage denials in writing; provide

3

Second, if the sponsor denies coverage, a beneficiary, an appointed representative,[5] or a prescribing physician may ask the sponsor for redetermination and present evidence in support of the request.[6] 42 C.F.R. §§ 423.580, 423.586. Third, a beneficiary, representative, or prescribing physician may seek further review of a denial on redetermination from "an independent, outside entity" under contract with the Secretary. 42 U.S.C. §§ 1395w-104(h), 1395w-22(g)(4)-(5); 42 C.F.R. § 423.600. Fourth, a beneficiary or an appointed representative can request a hearing by an administrative law judge ("ALJ") at the Office of Medicare Hearings and Appeals ("OMHA") on a decision denying coverage, provided that the claim satisfies an amount in controversy requirement (currently $160).[7] 42 C.F.R. § 423.2002. Fifth, the beneficiary or appointed representative may appeal an adverse OMHA decision to the Medicare Appeals Council. 42 C.F.R. §§ 423.2100, 423.2102, 423.2130. Finally, a beneficiary may seek judicial review of an adverse decision by the Medicare Appeals Council, which renders "final and binding" decisions subject to review in federal district court. 42 U.S.C. §§ 1395w-104(h)(1) and 1395w-22(g)(5) (entitlement to judicial review "as provided in 405(g)" if amount-in-controversy requirement is met); 42 C.F.R. §§ 423.2006(b), 423.2100, 432.2102, and 423.2130.[8]

---

"a description of the reconsideration and appeals process;" and provide for reconsiderations by the sponsor on both a standard and expedited basis. 42 U.S.C. §§ 1395w-104(g), 1395w-22(g)(1)-(3).

[5] Two of the amici in this case, the Medicare Advocacy Project and the Center for Medicare Advocacy, Inc., specialize in working on behalf of beneficiaries to bring such claims.

[6] A beneficiary may also seek coverage of a non-formulary Part D drug via an exceptions procedure. 42 C.F.R. § 423.578. A sponsor's "decision concerning an exceptions request" is an administratively appealable coverage determination. *Id.* § 423.566.

[7] While ALJs conduct hearings at the OMHA level, some appeals may be reviewed by attorney adjudicators without a hearing. *See, e.g.,* 42 C.F.R. § 423.2038.

[8] The amount in controversy threshold for a challenge in federal court in 2019 is $1,630, and in 2020 it will be $1,670. 84 Fed. Reg. 53,444, 53,445 (Oct. 7, 2019). Claims can be aggregated to

4

By regulation, "CMS program guidance, such as program memoranda and manual instructions," is not binding on attorney adjudicators, ALJs, or the Medicare Appeals Council. 42 C.F.R. § 423.2062. In other words, notwithstanding the CMS staff e-mail that Akebia challenges here, the administrative process could result in a beneficiary obtaining Part D coverage of Akebia's drug for iron deficiency anemia.

## II.    Factual and Procedural Background

Akebia is a Cambridge-based pharmaceutical company. In December 2018, it purchased Keryx Biopharmaceuticals ("Keryx"). *See* Dkt. 18, Declaration of John P. Butler ("Butler Decl."), ¶ 4. Keryx had developed a drug called Auryxia (ferric citrate), which is an iron salt. In September 2014, the Food and Drug Administration ("FDA") approved Auryxia to treat hyperphosphatemia in patients with chronic kidney disease on dialysis. *See id.*, ¶ 5. The FDA label states that, for this indication, "Auryxia is a phosphate binder indicated for the control of serum phosphorus levels in adult patients with chronic kidney disease on dialysis." Dkt. 25-5, Ex. E at 1.[9] In November 2017, the FDA approved Auryxia to treat iron deficiency anemia in patients with chronic kidney disease who are not on dialysis. *See* Butler Decl., ¶ 5. For this indication, the FDA describes Auryxia as "an iron replacement product indicated for the treatment of iron deficiency anemia in adult patients with chronic kidney disease not on dialysis." Dkt. 25-5, Ex. E at 1.

In September 2018, after the FDA approved Auryxia as an "iron replacement product" for the treatment of iron deficiency anemia, CMS sent Part D plan sponsors an email (the "CMS

---

satisfy the amount in controversy requirement. 42 C.F.R. § 423.2006(d).

[9] The government agrees with Akebia that statements in an FDA-approved label are proper subjects for judicial notice under Federal Rule of Evidence 201. *See* Dkt. 16 at 15 n.6.

5

Email") regarding Part D coverage for Auryxia. CMS explained that, "[s]ince Auryxia may or may not meet the definition of a Part D drug depending on its use, we expect that Part D sponsors will utilize a prior authorization edit, or other process, to ensure that it is being used for a Part D covered indication." Dkt. 1, Ex. 1. Previously, in August 2018, CMS had temporarily removed Auryxia from CMS's Formulary Reference File[10] ("FRF") "[c]onsistent with other iron products."[11] *Id.* The CMS Email restored Auryxia to the FRF. *Id.*

More than a year later, on October 15, 2019, Akebia filed its complaint challenging the guidance in the CMS Email about the use of "a prior authorization edit, or other process" to ensure that sponsors paid for Auryxia only when it was used for a Part D covered indication. Dkt. 1. On October 29, 2019, it sought a preliminary injunction. Dkts. 15 & 16.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint when the court lacks subject matter jurisdiction. A plaintiff has the burden of establishing that the court has subject matter jurisdiction, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991). In considering a motion under Rule 12(b)(1), a court may "take into account documents beyond the complaint." *Coyne v. Cronin*, 386 F.3d 280, 286 (1st Cir. 2004).

---

[10] "The FRF serves as a listing of drug products that can be included on Part D sponsors' Health Plan Management System (HPMS) formulary files that are submitted to CMS for review and approval." Ex. J, CMS, *Formulary Reference File Frequently Asked Questions* (Apr. 8, 2014) at 1. Contrary to Akebia's assertion, it is does not "list[] all of the drugs that CMS considers Part D covered drugs." Dkt. 1, ¶ 35; *see id.* at Q3.

[11] The PDBM describes "injectable or IV Iron products," "Polysaccharide Iron Complex," and "iron" as "prescription vitamins/mineral product[s]" excluded from Part D. Dkt. 25-15, Ex. O, Ch. 6, App'x B.

In evaluating a motion for failure to state a claim under Rule 12(b)(6), courts apply the *Twombly/Iqbal* plausibility standard: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Atieh v. Riordan*, 727 F.3d 73, 76 n. 4 (1st Cir. 2013) (noting *Iqbal*'s plausibility standard may be applicable in APA cases "where the underlying premise of the complaint is legally flawed (rather than factually unsupported)").

## ARGUMENT

Akebia's challenge to CMS's informal, sub-regulatory guidance should be dismissed for two reasons. First, this Court lacks subject-matter jurisdiction because claims such as Akebia's that arise under the Medicare statute must be administratively exhausted prior to judicial review. Second, because the CMS Email is not a final agency action, Akebia cannot state a claim for relief under the APA.

### I. This Court Lacks Jurisdiction Because Akebia's Claims Have Not Been Presented and Exhausted as the Medicare Statute Requires.

The Supreme Court has repeatedly emphasized that, with very limited exceptions not present here, judicial review of claims arising under the Medicare statute is available only once such claims have been presented and exhausted, so that the agency has the opportunity to address disputes without the need for litigation. *See, e.g., Ill. Council*, 529 U.S. at 13 (explaining that 42 U.S.C. § 405(h) "demands the 'channeling' of virtually all legal attacks through the agency . . . [to] assure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case by case"); *see also* 42 U.S.C. § 405(h) ("No action against the United States, the [Secretary], or any officer or employee thereof shall be brought

7

under section 1331 or 1346 of title 28, to recover on any claim arising under this subchapter."); 42 U.S.C. § 1395ii (incorporating § 405(h) into the Medicare statute); *Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825-26 (D.C. Cir. 2018) (discussing separate presentment and exhaustion requirements). The Supreme Court has characterized Section 405(h)'s bar to other avenues of review as "sweeping and direct," *Weinberger v. Salfi*, 422 U.S. 749, 789-90 (1975), and has explained that the bar applies to "all claims" that "aris[e] under the Act." *Heckler v. Ringer*, 466 U.S. 602, 615 (1984). A claim arises under the Medicare statute if the statute provides "'both the standing and the substantive basis for the presentation' of the claims." *Id.* (quoting *Salfi*, 422 U.S. at 760-61). It does not matter whether the plaintiff seeks "only declaratory and injunctive relief and not an actual award of benefits as well." *Id.*; *see also Ill. Council*, 529 U.S. at 13-14 (stating that *Salfi* and *Ringer* "foreclose distinctions based upon the 'potential future' versus the 'actual present' nature of the claim, the 'general legal' versus the 'fact-specific' nature of the challenge, the 'collateral' versus 'noncollateral' nature of the issues, or the 'declaratory' versus 'injunctive' nature of the relief sought" and declining to "accept a distinction that limits the scope of § 405(h) to claims for monetary benefits").

Akebia cannot circumvent the jurisdictional limitations of the Medicare statute by invoking the general grant of federal question jurisdiction found in 28 U.S.C. § 1331.[12] *See* Dkt. 1, ¶ 13. Akebia seeks what is, in essence, a universal coverage determination: a ruling that the Medicare statute does not bar coverage under Part D for Auryxia prescribed for iron deficiency

---

[12] 5 U.S.C. § 702, which Akebia also cites as a basis for jurisdiction, is not an independent grant of subject matter jurisdiction. *Conservation Law Found., Inc. v. Busey*, 79 F.3d 1250, 1260-61 (1st Cir. 1996). And the APA does not "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702; *see Maine Dep't of Health and Human Servs. v. United States Dep't of Health and Human Servs.*, No. 14-cv-00391, 2015 WL 4872376, at *7 (D. Me. Aug. 13, 2015) ("[T]he APA does not provide subject matter jurisdiction over the State's [Medicare] claims.").

anemia. But, as set forth above, Section 405(h) precludes federal question jurisdiction for claims like Akebia's that arise under the Medicare statute and have not been administratively exhausted. 42 U.S.C. § 405(h); *Puerto Rican Ass'n of Physical Med. and Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) ("*PRAPMR*").[13] Akebia does not even acknowledge this requirement: Akebia does not allege that a claim for coverage of Auryxia for iron deficiency anemia has been *presented* administratively (which in this context would require initiating an administrative claim for benefits), much less exhausted. *See Am. Hosp. Ass'n v. Hargan*, 289 F. Supp. 3d 45, 51-52 (D.D.C. 2017) (requiring presentation of a "specific claim for reimbursement . . . upon which the Secretary might make a final decision.").

Akebia may prefer to seek coverage determinations directly and wholesale, but "there is little doubt that Congress can, in the context of a complex administrative scheme, preclude pre-enforcement challenges without creating a hardship exception." *PRAPMR*, 521 F.3d at 50. Congress has done so here, and the standard for escaping Section 405(h)'s channeling requirement is high: Akebia must show that "application of 405(h) would not simply channel review through the agency, but would mean no review at all." *Ill. Council*, 529 U.S. at 19. Courts have interpreted this standard as requiring channeling "unless plaintiffs can show that there is no way of having their claims reviewed, there is complete preclusion, or there exists a serious practical roadblock to having their claims reviewed in any capacity, administratively or

---

[13] Akebia asserts that the CMS Email "conflicts with 42 U.S.C. § 1395w-102(e)," Dkt. 1, ¶ 59, which is part of the Medicare statute. The second count of the Complaint, seeking relief under the APA, states that the challenged CMS guidance conflicts with prior CMS decisions, all of which CMS made under its authority to administer the Medicare statute. *Id.* at ¶¶ 69-70. Akebia identifies no substantive basis other than the Medicare statute for its claims, and therefore its claims "aris[e] under" the Medicare statute for purposes of Section 405(h). *PRAPMR*, 521 F.3d at 48 (quoting *Salfi*, 422 U.S. at 760-61).

judicially." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 655 (5th Cir. 2012) (quotations omitted); *see also id.* at 655 n.4 (gathering citations).

Administrative review of a Part D coverage determination is not legally impossible, nor is it so difficult to obtain that the possibility of judicial review is threatened. Quite the opposite. A beneficiary could challenge a coverage determination, pursue administrative appeals directly, and in doing so present for administrative review the claim that Akebia presses: whether Auryxia for iron deficiency anemia is coverable under Part D. *See supra* at pp. 3-5. Beneficiaries, including those represented by amici, routinely challenge sponsors' coverage determinations, and Akebia points to nothing suggesting that this well-established process would somehow fail in its case. *See PRAPMR*, 521 F.3d at 50 (stating that requiring administrative exhaustion "is not denial of review, merely its postponement until a payment claim has been denied"); *see also Tangney v. Burwell*, 186 F. Supp. 3d 45 (D. Mass. 2016) (challenge to Part D coverage determination after administrative exhaustion brought by GBLS); Dkt. 37 ("MAP has represented many Medicare beneficiaries seeking coverage under Medicare Part D and has knowledge of the Medicare program.").

Finally, Akebia may not escape dismissal simply because Part D does not include a mechanism for drug manufacturers to challenge coverage determinations administratively. Dkt. 1, ¶ 38. The channeling provision applies to *claims*, not *claimants*. *See* 42 U.S.C. § 405(h). In *Southwest Pharmacy Solutions, Inc. v. CMS*, 718 F.3d 436 (5th Cir. 2013), the court affirmed the dismissal on jurisdictional grounds of a Part D case brought by a group of pharmacies who, like drug manufacturers, do not have the ability to challenge coverage determinations administratively. *See id.* at 444. The court held that Part D enrollees *could* bring the pharmacies' challenge administratively and so Section 405(h) barred jurisdiction under Section

1331. *Id.* at 448. It is not enough that *this particular plaintiff* cannot bring a claim through the agency review process; rather, a plaintiff must show "either a legal impossibility that *any claimant* would obtain judicial or administrative review, or hardship from administrative channeling that was sufficiently widespread to threaten the loss of any judicial review." *Id.* at 441 (quotation omitted, emphasis added). Akebia does not even mention the possibility of beneficiaries seeking coverage of Auryxia prescribed for iron deficiency anemia administratively—it only asserts that it cannot do so on its own behalf. This is not sufficient.

Because Akebia's claims have not received the administrative review required by statute, its complaint should be dismissed for lack of subject matter jurisdiction.

## II. The Court Should Dismiss the Complaint Because There Has Been No "Final Agency Action" under the Administrative Procedure Act.

Under the APA, judicial review is available only for "final agency action for which there is no other adequate remedy in a court" and for "[a]gency action made reviewable by statute." 5 U.S.C. § 704. To be final, the Supreme Court has held that the action must: 1) "mark the consummation of the agency's decision making process—it must not be of a merely tentative or interlocutory nature," and 2) "be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quotations omitted); *see also Berkshire Envtl. Action Team, Inc. v. Tennessee Gas Pipeline Co., LLC*, 851 F.3d 105, 111 (1st Cir. 2017) ("An agency action is 'final' only where it 'represents the culmination of the agency's decisionmaking process and conclusively determines the rights and obligations of the parties with respect to the matters at issue.'") (quotations omitted). The CMS Email does not satisfy either test.

11

A. **The CMS Email is not the consummation of CMS's decision-making process because it leaves room for further administrative decision-making and provides discretion to plan sponsors.**

The CMS Email is not the "consummation of the agency's decisionmaking process." *Bennett,* 520 U.S. at 177. Rather, as set forth above, a final agency action suitable for judicial review would be an adjudication by the Medicare Appeals Council upholding a sponsor's denial of Auryxia for iron deficiency anemia. *See* 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."); *Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 46 (1st Cir. 2009) ("*Only* after an agency's final action may courts review the agency's decision.") (emphasis in original). Because sub-regulatory guidance such as the CMS Email does not bind ALJs, attorney adjudicators, or the Appeals Council, *see* 42 U.S.C. § 423.2062, it cannot be the agency's final word on coverage for Auryxia.

CMS has made clear that its guidance, including e-mails such as the one Akebia now challenges, does not control drug coverage determinations under Part D. Rather, CMS has explained that "Part D sponsors are ultimately responsible for making coverage determinations and should not necessarily include or exclude a drug product from coverage based solely on the presence or absence of an [entry] on the FRF." Ex. J at 2.[14] The same document states that a Part D sponsor can cover drugs that are not on the FRF "[i]n the event that a sponsor has determined a drug product meets the definition of a Part D drug." *Id.* at 5. The Medicare Prescription Drug Benefit Manual prefaces a list of "coverage clarifications for specific products/drugs/drug categories" with language reminding sponsors of their independent

---

[14] The Court may take judicial notice of the CMS FRF FAQ under Federal Rule of Evidence 201. *Boateng v. InterAmerican Univ.,* 210 F.3d 56, 60 (1st Cir. 2000) (a court "may look to matters of public record in deciding a Rule 12(b)(6) motion").

obligations: "Specific products not identified in this table should always be evaluated against the statutory and regulatory definition of a 'Part D drug' before drawing conclusions from this table." Dkt. 25-15, Ex. O, Ch. 6, App'x. B.

The language of the CMS Email is consistent with CMS's descriptions of how it provides coverage guidance to sponsors. Notably absent from the email is the definitive language that one might expect from the "consummation of [CMS's] decision making process." *Bennett*, 520 U.S. at 177-78; *see also Holistic Candlers and Consumers Ass'n v. FDA*, 664 F.3d 940, 944 (D.C. Cir. 2012) (determining that an FDA warning letter did not constitute final agency action and citing an FDA Regulatory Procedures Manual, which described warning letters as "giving firms an opportunity to take voluntary and prompt corrective action *before* [FDA] initiates an enforcement action," and "*may* lead to enforcement action") (quotation omitted, emphasis in original). The email merely states that CMS "*expect[s]* that Part D sponsors will utilize a prior authorization edit, *or other process*." Dkt. 1, Ex. 1 (emphasis added). The email does not say "require" and does not set forth any consequence for failure to adhere to CMS's view. The CMS Email further states that "sponsors *may* add prior authorization" of Auryxia on their CY2018 and CY2019 formularies. *Id.* (emphasis added). Even if "expect" is read to "indicate a certain finality," that language alone is insufficient to show that the email "mark[s] the end of the agency's decision-making process." *Cf. New York v. United States Dep't. of Health and Human Servs.*, No. 07-cv-8621, 2008 WL 5211000, at *12 (S.D.N.Y. Dec. 15, 2008) (finding that letter with phrases "should include," "will ask," "must not," "must establish," and "expect[s]" paired with a possibility of corrective action was not final agency action).

13

Contrary to Akebia's claims, statements by CMS's Chief Legal Officer do not transform the CMS Email into final agency action. *Cf.* Dkt. 16 at 10 & 11 n.2, citing Dkt. 1, ¶ 46.[15] The D.C. Circuit has rejected similar claims. *See Holistic Candlers*, 664 F.3d at 945-46 (language on FDA website and oral communications do not transform otherwise non-final action into final action); *AT&T & Co. v. E.E.O.C.*, 270 F.3d 973, 975 (D.C. Cir. 2001) (agency action typically not final "when an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party").[16]

### B. The CMS Email did not determine any rights or obligations, and no legal consequences flow from it.

The CMS Email sets forth interpretive guidance to plan sponsors regarding their obligations under Medicare Part D not to cover statutorily excluded mineral products, but the email does not provide for any legal consequences. *See Bennett,* 520 U.S. at 177. As discussed above, the letter contains no mention of possible enforcement—an important factor in assessing whether there are legal consequences flowing from an alleged final agency action. *See Holistic Candlers*, 664 F.3d at 944 ("FDA warning letter that compels action by neither the recipient nor the agency" is nonfinal); *Mallinckrodt, Inc. v. FDA*, No. 14-cv-3607, 2015 WL 13091366, at *10 (D. Md. Jul. 29, 2015) (no final action where FDA "has not compelled or ordered Mallinckrodt to take any action").

---

[15] The complaint does not say whether the statement was oral or written.

[16] At the same time, Akebia's decision to seek rescission of the CMS Email via an informal request to an agency official further undermines its litigation position that the CMS Email is a final agency action. A party informally seeking modification or withdrawal is not behaving in a manner consistent with a decision being the "consummation of the agency's decisionmaking process."

Because it cannot point to any legal consequences from the CMS Email, Akebia relies on its assertion that the email "has, *as a practical matter*, already led Part D plan sponsors to cease coverage of Auryxia for IDA and require a PA for Auryxia when prescribed for hyperphosphatemia."  Dkt. 16 at 11 n.2 (emphasis added).  But practical consequences, without more, are insufficient to render an agency action final.  *See Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004) (Roberts, J.) ("Practical consequences, such as the threat of having to defend itself in an administrative hearing should the agency actually decide to pursue enforcement, are insufficient to bring an agency's conduct under our purview.") (quotation omitted); *see also Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 811 (D.C. Cir. 2006) ("The flaw in appellants' argument is that the 'consequences' to which they allude are practical, not legal."); *Nat. Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("[I]f the practical effect of the agency action is not a certain change in the legal obligations of a party, the action is non-final for the purposes of judicial review."). Because the CMS Email is not the agency's conclusive statement on Part D coverage for Auryxia for iron deficiency anemia and establishes no legal consequences, it is not a final agency action subject to judicial review.

## CONCLUSION

For the reasons stated above, the Court should dismiss Akebia's complaint for lack of jurisdiction or failure to state a claim upon which relief can be granted.

Dated: December 3, 2019

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Erin E. Brizius*
Gregg Shapiro (BBO #642069)
Erin E. Brizius (NY #4821161)
Assistant United States Attorneys
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
gregg.shapiro@usdoj.gov
erin.e.brizius2@usdoj.gov

Of Counsel:

ROBERT P. CHARROW
General Counsel

KELLY M. CLEARY
Deputy General Counsel

JANICE L. HOFFMAN
Associate General Counsel

SUSAN MAXSON LYONS
Deputy Associate General Counsel for Litigation

ALEXANDER R. WHITE
Attorney
U.S. Dept. of Health & Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Div.
5300 Cohen Building
330 Independence Ave., SW
Washington, D.C. 20201
(202) 619-0182
alexander.white@hhs.gov

U.S. Dept. of Health & Human Services               *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

    I, Erin E. Brizius, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                                                            */s/ Erin E. Brizius*
                                                                                            Erin E. Brizius
                                                                                            Assistant U.S. Attorney

Dated: December 3, 2019