IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AKEBIA THERAPEUTICS, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ALEX M. AZAR II, in his official capacity ) | No. 19-cv-12132-ADB |
| as Secretary of Health and Human Services; ) | |
| UNITED STATES DEPARTMENT OF ) | (Leave to file granted on 12/18/19) |
| SEEMA VERMA, in her official capacity as ) | |
| Administrator of the CENTERS FOR ) | |
| MEDICARE & MEDICAID SERVICES; ) | |
| Defendants. ) | |

**MEMORANDUM OF THE MEDICARE ADVOCACY PROJECT IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1. **Medicare Beneficiaries Do Not Have a Meaningful Administrative Remedy to Appeal the Denial of Part D Coverage for Auryxia as Treatment of Iron Deficiency Anemia Secondary to Chronic Kidney Disease.**

In Defendants' Memorandum of Points and Authorities in Support of Their Motion to Dismiss, Defendants assert, inter alia, that Plaintiff Akebia's complaint should be dismissed because (i) as a pharmaceutical manufacturer, Akebia has no legal avenue to oppose Defendants' action, and (ii) aggrieved individual Medicare beneficiaries must employ Defendants' labyrinthine administrative review process to contest any coverage denial of Auryxia™ for treatment of iron deficiency anemia secondary to chronic kidney disease (CKD). Def. Mem. in support of Motion to Dismiss at 3-5. Defendants state: "Because a beneficiary can seek coverage of Auryxia for iron deficiency anemia before the agency, which can culminate in a final decision by the Medicare Appeals Council that is reviewable in court, the Medicare statute forecloses judicial review of Akebia's claims." Def. Mem in support of Motion to Dismiss at 1. However,

an individual beneficiary's claim for benefits is entirely distinct from the claims and relief at issue here.

It is true that an individual beneficiary could make a claim to a Part D plan for coverage of or reimbursement for Auryxia to treat iron deficiency anemia. However, in order to be granted coverage under Part D, the drug must be a "covered Part D drug" used for a "medically accepted indication." 42 USC 1395w-102(e). In general, a covered Part D drug is a drug approved by the FDA when used for an approved use[1] that is not explicitly excluded. Auryxia was approved by the FDA for treatment of iron deficiency anemia in patients with CKD and was considered a covered Part D drug. The Defendants' actions, challenged herein, have had the effect, in the eyes of Part D plans, of converting Auryxia from a covered Part D drug for iron deficiency anemia to an excluded drug.

Certain FDA approved drugs are excluded from Part D coverage by statute. When a drug is excluded by statute, it is not coverable as a Part D drug even if it is medically necessary and the only drug available to treat the condition. The Medicare Prescription Drug, Improvement and Modernization Act of 2003 (MMA), incorporates a list of exclusions in the Medicaid statute at 42 USC sec. 1396r-8(d)(2). The majority of these exclusions are of a drug "when used for" a

---

[1] The Medicare Part D program became effective on January 1, 2006 pursuant to the Medicare Prescription Drug, Improvement and Modernization Act of 2003 (MMA), 42 U.S.C. §§ 1395w-101 et seq. Private Part D plans are required to provide coverage in accordance with the statute. The relevant provision of the MMA, reads as follows:
(e) Covered part D drug defined
(1) In general
Except as provided in this subsection, for purposes of this part, the term "covered part D drug" means—
(A) a drug that may be dispensed only upon a prescription and that is described in subparagraph (A)(i), (A)(ii), or (A)(iii) of section 1396r–8 (k)(2) of this title; or
(B) a biological product described in clauses (i) through (iii) of subparagraph (B) of such section or insulin described in subparagraph (C) of such section and medical supplies associated with the injection of insulin (as defined in regulations of the Secretary),
and such term includes a vaccine licensed under section 262 of this title (and, for vaccines administered on or after January 1, 2008, its administration) and any use of a covered part D drug for a medically accepted indication (as defined in paragraph (4)).

2

specific purpose such as weight loss.  There is also an exclusion for "prescription vitamins and mineral products," an exclusion which has to do with the nature of the drug and not its use.[2]

The FDA approved Auryxia for patients with iron deficiency anemia secondary to CKD based on clinical evidence. Defendants' actions now characterize this FDA approved drug as an excluded mineral.  Despite characterizing Auryxia as an excluded mineral, Defendants stress that individual Medicare beneficiaries must first challenge a Part D coverage denial for Auryxia by appealing to their Part D plan sponsors under the mechanism described in 42 C.F.R. sec. 423.566(b)(1).  Def. Mem. in Support of Motion to Dismiss at 3-5.  If that challenge is unsuccessful, individual Medicare beneficiaries (or their representatives) may then request a redetermination from the Part D plan sponsor, as set out at 42 C.F.R. sec. 423.580.  If the reconsideration request fails, the Medicare beneficiary can appeal to an outside Medicare contractor, 42 C.F.R. 423.600, and if still unsuccessful, can request a hearing by an administrative law judge (ALJ) at the Office of Medicare Hearings and Appeals (OMHA), per 42 C.F.R. sec. 423.2002.  Finally, if all of these administrative appeals are not successful, an individual Medicare beneficiary can appeal to the Medicare Appeals Council under 42 C.F.R.

---

[2] 42 USC sec. 1396r-8(d)(2): List of drugs subject to restriction.—The following drugs or classes of drugs, or their medical uses, may be excluded from coverage or otherwise restricted:
(A) Agents when used for anorexia, weight loss, or weight gain.
(B) Agents when used to promote fertility.
(C) Agents when used for cosmetic purposes or hair growth.
(D) Agents when used for the symptomatic relief of cough and colds.
(E) Agents when used to promote smoking cessation.
(F) Prescription vitamins and mineral products, except prenatal vitamins and fluoride preparations.
(G) Nonprescription drugs, except, in the case of pregnant women when recommended in accordance with the Guideline referred to in section 1905(bb)(2)(A), agents approved by the Food and Drug Administration under the over-the-counter monograph process for purposes of promoting, and when used to promote, tobacco cessation.
(H) Covered outpatient drugs which the manufacturer seeks to require as a condition of sale that associated tests or monitoring services be purchased exclusively from the manufacturer or its designee.
(I) Barbiturates.
(J) Benzodiazepines.
(K) Agents when used for the treatment of sexual or erectile dysfunction, unless such agents are used to treat a condition, other than sexual or erectile dysfunction, for which the agents have been approved by the Food and Drug Administration.

secs. 423.2100, 423.2102, 423.2130.  Def. Mem. in support of Motion to Dismiss at 3-5.  Only after a Medicare Appeals Council decision can an individual Medicare participant finally seek federal judicial review under 42 C.F.R. sec. 423.2130.

If a Medicare beneficiary seeks coverage of an excluded drug from a Part D plan documenting medical need, the claim will be denied.  In order to be treated as a coverage request that can proceed through the appeal process, the beneficiary will have to argue that the drug is not, in fact, an excluded drug.  In light of the Defendants' e-mail to Medicare Part D plan sponsors of September 14, 2018 (the "Decision E-mail", Docket No. 18-1), an individual Medicare participant wishing to make an effective challenge to a denial of coverage under Medicare Part D for Auryxia for treatment of iron deficiency anemia secondary to CKD would face a long, expensive and daunting pathway.  The individual Medicare participant would not only have to show that the drug is medically necessary, but also prove that Auryxia is not a "mineral" and is thus entitled to coverage by Medicare Part D like any other FDA-approved drug employed for an FDA-approved use.[3]  If however, the beneficiary does not know enough to argue that Auryxia is not a mineral, the matter will be treated as a grievance without appeal rights.[4]

Such challenge would certainly require the individual Medicare beneficiary to retain one or more expert witnesses to opine on the fundamental chemistry of the manufactured drug Auryxia versus that of naturally-occurring minerals, and might also require the services of intellectual property counsel.  To achieve a successful outcome, a Medicare beneficiary could be

---

[3] See Parts C & D Enrollee Grievances, Organization/Coverage Determinations, and Appeals Guidance, pages 20 – 21 at https://www.cms.gov/Medicare/Appeals-and-Grievances/MMCAG/Downloads/Parts-C-and-D-Enrollee-Grievances-Organization-Coverage-Determinations-and-Appeals-Guidance.pdf

[4] Id.

forced to obtain the services of such experts for <u>up to five rounds of appeals</u> (to the Part D plan sponsor, for redetermination, to a Medicare contractor, to an ALJ, and finally to the Medicare Appeals Council) before ever reaching federal district court.  As Defendants surely recognize, the substantial cost of such expert services would likely far exceed the financial means of the vast majority of Medicare beneficiaries.  We note that, as of 2016, half of all Medicare beneficiaries had annual income below $26,200 per person.  Kaiser Family Foundation, An Overview of Medicare, https://www.kff.org/medicare/issue-brief/an-overview-of-medicare/ (last visited December 13, 2019).

Even in the unlikely event that a beneficiary knows enough to argue that Auryxia is not an excluded drug, the beneficiary will encounter a problem due to the "Decision E-mail."  The Defendants correctly point out that CMS program guidance "is not binding on attorney adjudicators, ALJs, or the Medicare Appeals Council." Def. Mem. in support of Motion to Dismiss at 5.  However, Defendants failed to include the entire regulation which provides that such guidance is entitled to substantial deference and that, "An ALJ or attorney adjudicator or Council decision to disregard a policy applies only to the specific coverage determination or at-risk determination being considered and does not have precedential effect." 42 C.F.R. § 423.2062(b).  Thus, even if a beneficiary goes through the labyrinthine appeals process described above and succeeds in obtaining coverage of Auryxia, the beneficiary could be faced with the identical appeals process in the following plan year when seeking coverage of the drug.  The beneficiary will not be able to obtain a binding precedential decision that Auryxia, for treatment of iron deficiency anemia, is a covered Part D drug.

The litigation here could result in a binding decision that Auryxia is a covered Part D drug when used for either FDA approved use.  This does not mean that Auryxia must be covered

5

for any individual beneficiary. Contrary to the Defendants' argument, the Plaintiffs are not seeking a coverage determination.  They have not made a claim for benefits. Rather they are challenging the erroneous classification of the drug as a mineral that cannot be covered by Part D when used to treat iron deficiency anemia secondary to CKD.

The Defendants' reliance on *Tangney v. Burwell*, 186 F. Supp. 3d 45 (D. Mass.2016), is misplaced.  That case involved the question of whether Elizabeth Tangney's use of dronabinol met the definition of a "medically accepted indication."  Such a dispute is appropriately resolved through a coverage determination and individual appeal process, as the issue was whether the medical condition of a specific individual met the criteria listed in DRUGDEX, a drug compendium.  Here, the claim does not seek coverage for any individual.  It only seeks to reclassify a drug as a covered Part D drug rather than an excluded mineral. It is thus a claim which is collateral to a substantive claim for benefits. *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976); *Mediplex of Massachusetts, Inc. v. Shalala*, 39 F. Supp. 2d 88 (D. Mass. 1999). It should not be dismissed for failure to exhaust remedies as there are no meaningful remedies to exhaust.

 2. **Defendants' Rescission of Medicare Part D Coverage for Auryxia for Iron Deficiency Anemia Is in Fact a Final Agency Action.**

The Defendants assert that the Decision E-mail does not constitute "final agency action" and instead merely serves as "informal, sub-regulatory guidance" to Part D plan sponsors.  Def. Motion to Dismiss at 1, 7.  In fact, Defendants' Decision E-mail included no language stating that it was not a final action, nor was it labeled as mere program guidance.   Instead, the Decision E-mail flatly stated that Auryxia "was removed" from the Medicare Part D formulary reference file. .  Defendants issued the Decision E-mail <u>over fifteen months ago</u>, and have made no further announcements regarding Auryxia in all of that time, confirming the evident permanence of their decision.

6

Defendants' belated characterization of the Decision E-mail as not constituting a final agency action is as conclusory as the Decision E-mail itself. The reality is that the Decision E-mail has effectively terminated coverage of Auryxia for treatment of Medicare beneficiaries with iron deficiency anemia secondary to CKD by all or virtually all Medicare Part D plan sponsors. As there is no meaningful administrative remedy to challenge the action, the Plaintiffs' claim should be allowed to proceed.

## CONCLUSION

For all of the above reasons, the Medicare Advocacy Project respectfully urges the Court to reject Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim. Granting such a dismissal would over time expose thousands of individual Massachusetts CKD patients suffering from iron deficiency anemia and who do not benefit from orally-administered iron supplements to the risks of either (i) invasive infusion with an iron supplement, or (ii) an extended, financially prohibitive, and futile series of administrative appeals for Medicare Part D coverage of an FDA-approved drug (Auryxia) for an FDA-approved use (treatment of iron deficiency anemia secondary to CKD).

Dated:  December 18, 2019                                              Respectfully submitted,

                                                                                              /s/ Nancy J. Lorenz
                                                                                              Nancy J. Lorenz
                                                                                              (BBO#305000)
On Brief:  John Harrington                                             Greater Boston Legal Services
                                                                                              197 Friend Street, Fourth Floor
                                                                                              Boston, Massachusetts 02114-1806
                                                                                              617-603-1573
                                                                                              nlorenz@gbls.org

        /s/ Donna McCormick
Donna McCormick
(BBO#559790)
Greater Boston Legal Services
197 Friend Street, Fourth Floor
Boston, Massachusetts 02114-1806
617-603-1534
dmccormick@gbls.org

/s/ Radhika Bhattacharya
(BBO#674364)
Greater Boston Legal Services
197 Friend Street, Fourth Floor
Boston, Massachusetts 02114-1806
617-603-1581
rbhattacharya@gbls.org

**CERTFICATE OF SERVICE**

    I, Nancy J. Lorenz, hereby certify that this document filed through the EFC system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

December 18, 2019        /s/__Nancy J . Lorenz_____
        Nancy J. Lorenz