**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AKEBIA THERAPEUTICS, INC.,<br><br>         Plaintiff,<br><br>   v.<br><br>ALEX M. AZAR II, in his official capacity as Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; SEEMA VERMA in her official capacity as Administrator of the CENTERS FOR MEDICARE & MEDICAID SERVICES; CENTERS FOR MEDICARE & MEDICAID SERVICES,<br><br>         Defendants. | Civil Action No. 19-12132-ADB<br>(Leave to file granted on 01/13/2020) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

The Medicare statute creates an administrative appeal mechanism for Medicare beneficiaries to seek coverage for Auryxia, and that administrative appeal mechanism has not been exhausted here. Accordingly, this Court does not have jurisdiction over this claim brought by Auryxia's manufacturer, plaintiff Akebia Therapeutics, Inc. ("Akebia"). *See* 42 U.S.C. § 405(h). It is of no moment that Akebia has no such mechanism available to it. Furthermore, there has been no final agency action that would create a predicate for judicial review under the Administrative Procedure Act ("APA"). The challenged CMS Email does not reflect the consummation of the agency's decision-making process because it is subject to review through established administrative channels. Dismissal is therefore appropriate for lack of jurisdiction and failure to state a claim upon which relief can be granted.

1

## ARGUMENT

### I. This Court Lacks Jurisdiction Because Part D Beneficiaries Can Exhaust Claims Substantively Identical to Akebia's Claim.

This Court lacks jurisdiction over Akebia's claim because Part D beneficiaries can use an established administrative process to challenge sponsors' Auryxia coverage determinations, and thus can pursue a claim that is substantively identical to Akebia's challenge to the CMS Email. Unless "what appears to be a channeling requirement" turns "into *complete* preclusion of judicial review," *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 22-23 (2000) (emphasis in original), federal courts lack the power to adjudicate unexhausted claims that arise under the Medicare statute. To be sure, Akebia itself cannot bring a claim for Medicare coverage of Auryxia, but Medicare beneficiaries can. Because judicial review of the relevant claim is available, there is no "complete preclusion" and no basis exists to permit Akebia to circumvent the administrative process.

Akebia's inability to bring such a challenge administratively on its own behalf does not mean that there is "no review at all" except by an action under Section 1331.[1] *Illinois Council*, 529 U.S. at 20; *see* Dkt. 47 at 11; *see also Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of Health and Human Servs.*, 455 F.3d 500, 504-505 (5th Cir. 2006) (*"NATA"*) ("We are not

---

[1] Akebia cites *Action Alliance of Senior Citizens v. Leavitt*, 483 F.3d 852 (D.C. Cir. 2007), for the proposition that it can avoid the channeling requirement because it cannot bring its own claim administratively. Dkt. 59 at 12. But *Action Alliance* involved a statutory claim for a waiver of the requirement to repay premiums that the government had mistakenly refunded to beneficiaries. The waiver claim at issue was unrelated to any claim for Medicare coverage. The *Action Alliance* court held that there is no "avenue for judicial review of the Alliance's [42 U.S.C.] § 1395gg waiver claim"—referring to a statute governing overpayment by the government to service providers. 483 F.3d at 860. Akebia removes the prepositional phrase "of the Alliance's § 1395gg waiver claim" from its quotation, *see* Dkt. 59 at 12, leaving the incorrect impression that the court's analysis was based on the identity of the would-be claimant rather than the type of claim at issue.

persuaded that the inability to acquire the physician or beneficiary's right to administrative review ends our inquiry . . . . [I]n deciding whether the *Illinois Council* exception applies, we must consider whether *the claim* may ultimately be subject to review after proceeding through administrative channels.") (emphasis added). Nor does *Illinois Council* limit the channeling requirement to cases involving a claim by an association that could have been brought by a member entity. *Illinois Council*, 529 U.S. at 24; *cf.*, Dkt. 59 at 15-16. In *NATA*, the Fifth Circuit, applying *Illinois Council*, dismissed claims brought by athletic trainers because physicians, who had no legal relationship to the trainers, had both the ability and incentive to challenge the regulation at issue. 455 F.3d at 505, *see also id.* at 504 ("The parties agree that NATA's members cannot obtain administrative review because they are neither beneficiaries nor providers."). In *Council for Urological Interests v. Sebelius*, 668 F.3d 704 (D.C. Cir. 2011), the inability of the Council or its members to challenge the regulation did not end the court's inquiry; the D.C. Circuit refused to apply section 405(h) *only* after reviewing "several unique characteristics of the hospitals' relationship to the Council and to the challenged regulations" and concluding that the entities that could challenge the regulation lacked incentive to do so. 668 F.3d at 713, 714. Thus, in interpreting *Illinois Council*, both the D.C. Circuit and the Fifth Circuit look to whether a third party has the ability and incentive to bring an administrative challenge, even in the absence of a legal relationship between that third party and the plaintiff. [2]

---

[2] Akebia attempts to shift its burden to prove subject-matter jurisdiction to the government, suggesting that the government must offer evidence that enrollees "have the resources and incentives to pursue" review of any coverage denial. Dkt. 59 at 17; *cf. Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (the party invoking jurisdiction "carries the burden of proving its existence"). Although it was not required to do so, the government has demonstrated that beneficiaries have pursued administrative appeals of non-coverage of Auryxia for iron deficiency anemia. Dkt. 67. Akebia's reliance on *Council for Urological Interests* is therefore misplaced. Dkt. 59 at 17. The D.C. Circuit held—citing evidence from the complaint—that the Council had

It does not matter that a beneficiary could not file an appeal formally seeking to overturn the CMS Email,[3] and it is irrelevant that "the agency adjudicator [in a challenge to an individual plan sponsor coverage determination] would not be permitted to overrule the CMS Decision." Dkt. 59 at 13-14. Courts applying section 405(h) routinely require administrative exhaustion of a Part D claim for benefits before hearing a challenge to the policy underlying the unfavorable coverage determination, even when that policy is embodied in a regulation that binds agency adjudicators. 42 C.F.R. § 423.2063(a); *see, e.g.*, *Southwest Pharmacy Sols., Inc. v. CMS*, 718 F.3d 436, 448 (5th Cir. 2013) (affirming dismissal of pharmacies' challenge to preferred pharmacy rule where no beneficiary had exhausted claim for benefits); *Layzer v. Leavitt*, 770 F. Supp. 2d 579, 587 (S.D.N.Y. 2011) (reviewing the Secretary's statutory interpretation underlying denial of Part D coverage only after administrative exhaustion of claim); *see also Puerto Rican Ass'n of Physical Med. and Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008)

---

met its burden to show the futility of administrative review. 668 F.3d at 713. The Council showed not only that no hospitals had brought a challenge to the regulation at issue, but also that the hospitals that could have brought such a challenge tended to benefit from the regulation and had no incentive to challenge it. *Id*. By contrast, Part D enrollees have ample incentive—in the form of insurance coverage for Auryxia—to challenge sponsors' coverage denials, and in fact are bringing such challenges.

[3] According to Akebia, the administrative process is unlikely to result in review of the challenged guidance because, if Auryxia is not on the sponsor's formulary, the enrollee would have to show that coverage was "medically necessary" and that an "exception" is warranted on that basis (not on the basis that Auryxia is a covered part D drug when prescribed for iron deficiency anemia). Dkt. 59 at 14-15; *see* 42 C.F.R. § 423.578(b). But Akebia does not allege that sponsors have removed Auryxia from their formularies in response to the CMS email; to the contrary, Akebia states that "Auryxia is on formulary at all major Medicare Part D plans." https://www.auryxia.com/akebiacares/patient-coverage.html. The exceptions process allows a beneficiary to request coverage for an *off-formulary* drug. *See* 42 C.F.R. § 423.578(b). A Part D enrollee does not have to invoke the exceptions process to seek coverage for Auryxia if it is on his or her Part D plan's formulary. *See* § 423.566(b)(1). Because prior authorization requirements are a form of utilization management, a beneficiary *could* choose to challenge a PA via the exceptions process, but they are not required to do so. *See* § 423.578(b).

(affirming dismissal of challenge to Medicare Part B reimbursement regulation where claim for reimbursement had not been exhausted).[4]

## II. The Court Should Dismiss the Complaint Because There Has Been No Final Agency Action under the Administrative Procedure Act.

The CMS Email does not constitute final agency action because it is subject to further agency consideration via the administrative review process and because no legal consequences flow from the email itself, which conveyed only CMS's expectations to plan sponsors. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

First, the structure of the administrative review process itself demonstrates that the CMS Email did not end the agency's decision-making process. *See Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1269 (D.C. Cir. 2018) ("The manner in which an agency's governing statutes and regulations structure its decisionmaking processes is a touchstone of the finality analysis."). A challenge to CMS's guidance could be channeled through an appeal of a plan sponsor's coverage determination, ultimately leading to a possibly contrary decision by the Medicare Appeals Council. *See id.* at 1268 (guidance from staff that did not bind Commission was nonfinal). This process does not involve agency revision of an otherwise final decision based on new information. *Cf. United States Army Corps of Engineers v. Hawkes Co. Inc.*, 136 S. Ct. 1807, 1814 (2016) (potential revision of otherwise final decision based on "new information" did not render action non-final); *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1289 (D.C. Cir. 2016) (possibility of revision upon "new information" insufficient to render action nonfinal). Akebia's dissatisfaction with its inability to obtain a global coverage determination—something the Part D

---

[4] While Akebia argues that a beneficiary could not administratively challenge what it characterizes as the CMS Email's "PA requirement," Dkt. 59 at 15, Akebia itself does not make a stand-alone challenge to the so-called PA requirement in either cause of action in its Complaint, *see* Dkt. 1 at 24-27.

5

statute does not provide for—does not transform preliminary guidance subject to further review in individual appeals into a final agency action.

Second, Akebia has not identified legal consequences that flow from the CMS Email. As discussed above, beneficiaries can obtain coverage of Auryxia for iron deficiency anemia through the administrative appeals process. Evidence that plan sponsors changed their behavior in response to the CMS Email,[5] without more, is insufficient to show that an agency action has the legal consequences required for finality. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 811 (D.C. Cir. 2006).

Moreover, the CMS Email does not legally restrict plan sponsors from seeking payment for Auyrxia for iron deficiency anemia. *Cf.* Dkt. 59 at 24. CMS maintains discretion over whether to request correction of payment data that it believes is erroneous, 42 C.F.R. § 423.352(b), meaning that (notwithstanding the CMS Email) the agency could choose to take no action against a sponsor that covers Auryxia for iron deficiency anemia. If CMS does send a data correction notice to a plan sponsor, that sponsor may refuse to correct the data and then appeal the ensuing payment offset notice through a three-level process culminating in a "final and binding" decision by the Administrator. 42 C.F.R. § 423.352(c)-(e). As described above

---

[5] Akebia asks this Court to consider extrinsic material in evaluating the government's 12(b)(6) motion regarding the finality of agency action. *See* Declaration of Jane Barlow (Dkt. 61) and Declaration of John Butler (Dkt. 18). A court assessing a motion under Rule 12(b)(6) generally considers only the evidence in the pleadings, although certain narrow exceptions allow consideration of other material. *Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013). Akebia does not assert that the declarations satisfy any of the exceptions. Instead, it states that "the final agency action requirement implicates statutory jurisdiction," Dkt. 59 at 8 n.2, an apparent suggestion that the Court recast the government's 12(b)(6) motion arguing that there is no final agency action in this case as a 12(b)(1) motion. The government objects to this modification of its pleading and respectfully requests that the Court disregard the substantive statements in the Barlow Declaration and the Butler Declaration in resolving the 12(b)(6) motion. *See Suk Jae Chang v. Wozo LLC*, No. 11-10245-DJC, 2012 WL 1067643, at *13 n.8 (D. Mass. Mar. 28, 2012).

and in the government's opening brief, practical consequences, such as potentially having to defend oneself in an administrative proceeding, do not show that an action has imposed legal consequences sufficient to meet the finality requirement.  Dkt. 47 at 16; *cf. Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 958 (D.C. Cir. 2019) ("[T]here is no further agency action for Ipsen to invoke or to exhaust to plead its cause.").  Unlike the letter at issue in *Ipsen*, the CMS Email does not refute a possible defense in a later enforcement proceeding, *id.* at 957; nor is it a component of a regulatory scheme such that it has "immediate and direct legal force," *id.* at 958; nor does it apply the agency's interpretation of the governing law to the specific facts of a case in a manner resembling an individual adjudication, *id.* at 959.  The CMS Email, sent to sophisticated parties fully aware of their ability to challenge the guidance in question and obtain administrative review, is a routine example of a mere "interpretation[] of governing statutory . . . obligations or prohibitions" and is not final agency action.  *Id.* at 959.

## CONCLUSION

For the reasons stated above and in the government's opening memorandum, the Court should dismiss Akebia's complaint for lack of jurisdiction or failure to state a claim.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Erin E. Brizius*
Gregg Shapiro
Erin E. Brizius
Assistant United States Attorneys
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
gregg.shapiro@usdoj.gov
erin.e.brizius2@usdoj.gov

Dated: January 10, 2020

Of Counsel:

ROBERT P. CHARROW
General Counsel

KELLY M. CLEARY
Deputy General Counsel & Chief Legal Officer-CMS

JANICE L. HOFFMAN
Associate General Counsel

SUSAN MAXSON LYONS
Deputy Associate General Counsel for Litigation

ALEXANDER R. WHITE
Attorney
U.S. Dept. of Health & Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Div.
5300 Cohen Building
330 Independence Ave., SW
Washington, D.C. 20201
(202) 619-0182
alexander.white@hhs.gov

U.S. Dept. of Health & Human Services                *Attorneys for Defendants*